Case number 16-2752, James Edward Meeks v. City of Detroit MI. Oral argument not to exceed 15 minutes per side. Todd Flood for the appellant. You may proceed. May it please the Court, Todd Flood on behalf of the appellant, Plaintiff James Meeks, I'd ask the Court to allow me two minutes for a five-minute rebuttal. Thank you. As the Court can note, I am not Janet Knapp. Due to unforeseen circumstances, I had to make a late journey to this Court. Judge, Your Honors, this case really revolves around, in essence, a lack of police diligence in changing the trajectory of Mr. Meeks' life. When they had all the answers right there in front of them, they were more than making a mistake. They were totally indifferent to the rights and constitutional rights of Mr. Meeks, which we suggest, Your Honors, that the District Court err in granting the summary motion for the defendants in this case. What's clear in this case, Your Honors, is that, and we're not going to dispute, there was a probable cause for Mr. Meeks to be arrested. There was an allegation, and he had misdemeanor warrants out for his arrest. And there was an allegation that he was identified in a carjacking case. However, that carjacking case that he was identified in never went anywhere. It was never charged, and to this date has never been charged. What happened, ultimately, was Mr. Meeks, when the police officer in this particular case put in Mr. Meeks' name, it came up with, obviously, a different person by error or whatever lapse. It also didn't have the same birth date, didn't have the same description, things of that sort. He pulls up this photograph when he puts in Mr. Meeks' wrong name, Meeks Little, wrong middle initial, and wrong birth date, and puts a six-pack photo array lineup together. He passes that photo lineup to his other colleagues, which he talks about in his deposition briefly, saying, we rely on teamwork. It's a huge part of his auto theft unit. In doing so, he passes out bad information to the officers in doing arrests and going to the complainants in this case. When he passes out the wrong information, it's so palpable, it's the wrong person. The complainants identify the wrong person, not Mr. Meeks, but they use Mr. Meeks' name. Mr. Meeks gets arrested the following day after these carjackings, these two carjackings, which I will rely upon in my papers filed with the court. When he gets arrested the following day, his house is searched. Nothing in that house, there's no evidence in that home of the carjackings, the two carjackings for which he was charged. No money, no clothing. Wasn't the car found near his house? Not near, it was about a mile away, which in Detroit, in those city blocks, would take you some time to traverse to get to where it was at. But yeah, it was on the same street, the Durango, and that was his father's, from what I can see the court records show, his father's home for where he was staying. Also, the identification, Mr. Meeks, who is in custody, has braids going down past his foreheads and has a light bearded picture, or a heavy bearded picture, as opposed to Mr. Meeks. But I didn't understand that argument at all, because when we look at the pictures, you called it a six-pack, on one of these there are actually seven, and there's an argument that Meeks' picture is the upper left and the upper right. It doesn't look like the upper right one could have appeared, because it's a subsequent arrest photo, after this one. But the point is, he has braids in one of these pictures that your papers show, and he doesn't have braids in the other picture. So to say that at one time somebody had braids, therefore a police officer must know that this is not the picture of the true perpetrator, because the person in the picture doesn't have braids, seems to me to be entirely eliminated by virtue of these two pictures that we know are Meeks. One has braids and one doesn't have braids. So what's the significance of the braids? Braids come and go.  It doesn't take more than a minute to cut them off. Correct, but he then goes into custody. So the laughable part about it, or the part about that, is Mr. Meeks is arrested the next day in custody. So he stays in custody for 15, 16 days, and that's where I came in the day before, and looking at the identification, he is dismissed at the district court, because it wasn't the right person. But to answer your question... I think you're missing the point. You made the point about they should have known because the person had braids or didn't have braids. The two pictures, one has braids and one doesn't have braids. So what does that tell us? The point that Mr. Meeks is not the person in the photograph, you've got the wrong person. You've got Meeks Little in the photograph, who is identified by the complainant. The photographs of Meeks that we know were in the lineup, which is the upper left, and the photograph of Meeks Little, which is the third one over on the top, except for the lighting differences, they don't seem to be materially distinguishable to me. If you're looking at the photograph with regards to when it came to... I'm looking at page ID 611. So the issue before that I would say to the courts to glean on, if for argument's sake you have the man in custody the next day and I pass away that you've got the wrong guy in the photograph, he picks out a different person alleged to be Mr. Meeks, but it's really Meeks Little. You have Mr. Meeks in custody the following day, and you can see him with his braids. You can see him as how he's positioned in court. Are you saying Cross Nelson saw him? No, not Cross Nelson. But Cross Nelson... That's who made the photo array. He did. He did. When he made the photo array, using what information he received, he says he has the date of birth, or it may have the date of birth. Obviously the date of birth was wrong because Mr. Meeks was a year off on the date of birth. And you don't even have the same name and the same middle initial. So when he put that together, making a mistake I can see is maybe a math error of 2 plus 2. You're young and you make it to 5. But if you deliberately, or you have this reckless indifference... There's no question anybody deliberately did this. You don't have any proof of that. No, Judge, Your Honor, I'm not saying... This is a reckless case. Correct, correct. Think about it from the standpoint if you have someone that you're putting in... You're responsible for the protection of the citizens. And what you're doing as an officer, he's saying, I don't have enough time, I'm overworked, I'm jammed up on time. It kind of gives you that tone in his deposition. But yet you're so serious in changing one's liberty, you would take the time at least to confirm and make sure you have the right person, at least by date of birth and the right name. That's the reckless indifference. It's not a mistake. Let's assume that you're right about that. Sure. This is an immunity case. Do you have any cases that say that you're not entitled to qualified immunity because you didn't do the things that you just told us? I attached and I gave in Judge Gershwin-Drain's opinion in the district court about the qualified immunity and his analysis. And I thought it was right on, as Ms. Knapp put in the briefing. I'm sorry, I'm just not following you. Are you telling us that you sent in a letter about an unreported Gershwin-Drain decision? No, no. I'm sorry, I apologize. That was referenced in our appeal. Judge Drain's opinion. So the case you want me to look at to answer my question is a Drain case in the Eastern District? Yes, Judge. Do you remember the name? Yes, Judge. Your Honor, I'm sorry. I have it right here, if I may. And that was Marvin Seals plaintiff versus the city of Detroit et al. Okay, thank you. And in that particular case, Judge, it was another one that was in misidentification. And he gives analysis to the Sixth Circuit as it relates to qualified immunity. The Seals decision that you're referring us to, according to page 51 of your brief, says it was January 3, 2017. When did all this take place? This judge was a couple of years, June 8, prior to. So Seals, even if you look towards a unreported district court decision, which we don't, even if we did, it's after these events. However, he does rely upon precedence. You're right, Judge. He does. So do we have any that you want us to look at that are before this incident that says you have a duty to do all of these specific things about this photo lineup? Which, I mean, they make logical sense. I'm not saying that you're wrong, that they make sense. But I'm just trying to figure out if there's a case that ever said a police officer has to do that or should know they have to do that. As opposed to relying upon the machine that the police department provides where you put in a name and you get a photo array. Right. And I would discuss that, putting in the name if you want. But the case is that the Sixth Circuit, that I think the court can lean on, is in Flemster versus the City of Detroit, 358F at 616. Flemster? It started with an F, did you say? Yes. I don't see that on your table of contents. Is it in the reply brief? I don't believe so, Your Honor. No. I apologize. This was cited within Judge Drain's case, and I apologize. The issues of qualified immunity, I think the defendant in this case would fail upon, just based on several things, but most importantly, Your Honor, the systemic pattern and conduct of, one, the lack of training or training on the job and saying, I leave it to the younger people to do the training, and the lack of diligence that was used in this particular case. The lack of diligence really comes down to these four officers slash detectives. Well, it certainly has to, Russell and Schmelter. Their failure really to closely review the photo array before they prepared and submitted these reports for the warrant request. Basically, it comes down to that. That one, Your Honor. Then upon the arrest, he sits there for a period of time, and they have all of the information available to them to ferret out that they have the wrong man. And that material that they have, it's their job, their oath that they take to make sure that they have the right man. When you say all the information available to them, are you talking about the composition report? Are you talking about the ability to call in, email, text, whatever, to get more information from a central source? That, along with, Your Honor, the lean machine to make sure you have the right person, date of birth. Aren't you basically making a duty to investigate argument that you say exists beyond an arrest based on probable cause, and you're not disputing probable cause for the arrest? Right, but the probable cause goes away relatively quick because it was a misdemeanor that was bondable in effect. No, I'm not making that as the sole argument that this is a duty to investigate. I'm making the argument that they had the information, and this reckless indifference as it relates to putting a person behind bars, when they had all of the right birth dates of Meeks Little and Meeks, they had the correct names of both individuals, and for whatever reason, you can see clearly that they don't use the diligence and turn a blind eye to the person that's in custody. And how do you connect their conduct, I guess especially Craig Head and Cross Nelson, to the actual decision by the prosecutor to go forward with the prosecution? Don't you need to do that in some fashion? They aid and abet. So the prosecutor sitting back behind the Wayne County Prosecutor's Office, filling out a machine himself or herself to punch up a warrant for a particular person, has to rely upon the officer's due diligence for which they are swearing to that is right, that's correct. So a prosecutor sits behind a desk, looks at the material, is the elements met by a probable cause standard, presses a button, and a warrant is issued. That's all relied upon by the officer's work and ability to swear to in front of a judge, to say what I did, I am swearing the oath that everything is accurate, which in fact was not accurate. Am I right that all of the cases that address that address the question of whether there was a knowingly false statement made to the prosecutor? Yes. Where's the knowingly false statement here? I understand your reckless argument. I get that. Right. So do we have any cases that say that if the officer was reckless but believed the accuracy of what he sent to the prosecutor, that there's still a malicious prosecution claim that's available then? Your Honor, the knowingly part, the men's, basically the thought process that he had this, I think goes to he, total disregard, he knew one thing he could check, right? He knew he could check the name. He knew he could check the birth date of the right person when he pulled up the sheet. You can't say that's a mistake. So when he says, and he says also, other people, other officers that I give this photo line of are going to rely upon what I do. As I understand it, you don't even contend that the prosecutor relied on the photo arrays. The photo here, the prosecution relies upon the statements given. The statement's in the warrant, right? Right. The statement's given in the warrant. And as far as we know, there's no knowing falsity in the warrant. Except for, candidly, yes, Your Honor. There is no statement that the officer that presented the warrant said by the complainant, I knew that to be Meeks Little. So you're back to reckless disregard, aren't you? Yes. Okay. Thank you. Thank you very much. We'll hear from the city. May it please the Court, my name is Linda Fagans, appearing on behalf of the city of Detroit. Your Honor, this is a malicious prosecution case. In this case, this is one of the cases where qualified immunity should apply. First of all, the two major weaknesses, as Judge McKee has addressed, is first of all, in these malicious prosecution cases, one of the elements that you must indeed prove is that there was a substantial showing that the officers knowingly or recklessly had brought this case. And you cannot show this in any other factors in this case. You can't make a substantial showing on the Johnson v. Moseley case, on the Hill v. Carr case I cited in the briefs, or in the Valikin v. Shaw Sixth Circuit cases in this particular case. What do we have in this case? And when you look at this case, you've got to look at the totality of the circumstances here, what a reasonable conduct was. In isolation, yes, this was a mistake. And Cross Nelson stated it right off the bat. What do you say?  You have to remember here what happened in this case. This was a series of June 8th, 5 a.m. Fast Track is robbed. Within two hours later, you have a robbery at Sunoco. Then another hour, 40 minutes later, Sitco. What happens? At the Fast Track, one of the victims recognizes Meeks, was able to give information about where they thought he lived, what kind of car it was. Evidently, he knew him. This was the eyewitness. They began to take this information. They came up with the name of Meeks. Why? They knew him because he had robbed them before. Right. Got caught. Right. So this name Meeks. Yeah. So you got this Meeks guy, and they began to improvise on this Fast Track. And so they get this information regarding him. Once they pick up this information, make it in person's interest, they take it to, what's his name, Terry Cross Nelson. Terry Cross Nelson, who is indeed a he. You get mixed up with the hyphenated name, but I think that plays a part, and maybe it shouldn't. But what happens is he takes the name, and all he has is James Meeks. He has James Meeks. He puts the name into the mug shot, a mugging machine. This is what they use. It comes out with the pictures. He has three pictures. Two of them was of James Meeks. One of them was a bad picture, and then there was another. He looks at the picture. What did he say? They all look the same. You didn't see the difference. Because, you know, time changes. You have one with a beard or one without the dress and didn't. So what he did is he – and all he has to remember when he puts those names is a name, and he couldn't remember. He might have had a birth date. He had no Social Security number. When does the composition? Is that composition? Yeah, June. All that happened on June 8th. So what happens is once he gets the – he chooses, he says, he chooses this one. He said, I choose this one. This is James Meeks, because he just chose that picture, and I guess one was bad. He looks at the composition, and he tells – he says he didn't notice – he did not have a middle initial. And so when he sees that he didn't – he even admits in his deposition. And this is – and that's what qualifying immunity does, makes room for reasonable mistakes in here. And it's a question of law that this court can definitely answer. He says, I didn't know anything about a middle initial or something. The picture looked the same. And he says, it's false on me, and he chose James Meeks. He thought the name was a mistake. And guess what he's playing? Just like I'm Cross Nelson. Some people call me Cross. Some people call me Nelson. But I'm the same person. He figured this was one and the same purpose, and he didn't – that's what he did. He made a misjudgment and qualified immunity. Your opposing counsel thinks that rises to the level of reckless disregard when he noticed it was a different last name and didn't verify on the composition report, which would have shown him immediately it was a different person. Because he has a picture of Meeks, and he has a picture of Meeks Little, and he has information from both of them, but he didn't look at it. He made – I don't think it was reckless. He made a constant judgment that it's the same one, and he didn't think because just like he was talking about his Cross Nelson, he was still the same person, so I guess he didn't count it. Now, I can't justify, I can't rationalize what all his thinking was. As a police officer, we've got to look at what he's thinking from his experience and his training in here. So what he does, he takes the information, and he gives the name to them that this is James Meeks. But does it matter to you that he then attended the lineups? He didn't attend the lineup. He didn't – no, see, that's where it's not clear. He gave the information, and the photo array, the photo array was this. And you have to get the difference. They took that photo to your – I'm a witness. They brought it to me for a witness. Showed the witness, and what happens, that's why the name James Meeks. Nobody put any emphasis on James Meeks Little. What is it – and this is also a coincidence. James Meeks and James Meeks Little are both terrorizing the community. Both of them are guilty of a crime, one to which James Meeks indeed, which gave him probable cause to even bring in, confessed to on the next day. You cannot forget that. So, yes, and then on that same day, on June 8th, what you have here is that they take James Meeks' photo. Everybody believe it is James Meeks' photo. And it's no duty, Judge McKee, as you were asking, for them to double-check. There's no constitutional standard. It might have been negligence, but not a reckless. It might have been negligence. It might be sloppy work. But as you said, the case in Johnson v. Mosley, that's not a constitutional violation in this particular case. And that's just what qualified immunity here, when you look at the totality of the circumstances, as the Supreme Court in Illinois v. Gates state here. So then he goes, and the person says, yes, that's him. They believe they got James Meeks. The next person identifies him. They said, that's him. They believe that photo is James Meeks. So they have probable cause to hold him those 16 days on a carjacking, on those two carjackings. They made a mistake. But as far as they're concerned, probable cause is what? What's the facts that they have that a reasonable officer believes that he had at the time of the arrest? They thought that was James Meeks in this particular case. Those two officers have a right to realize, just like the collective knowledge doctrine, if you tell me I have a right to believe that this police officer I'm working with gave me reliable information, I relied upon that under the collective doctrine. So they pass it on. Nobody said that he had to double check. It might have been good. They had no reason to consider a double check. Maybe that would have happened. But it's not a constitutional standard we're talking about. You might say negligence. Oh, they could have did better. But the point is, you did really have a criminal here. Okay? So he can't. The only reason why he wasn't charged on the robbery, the first one, is because this is what? They were trying to be reasonable. One of the officers decided that he didn't want to turn in a warrant unless he talks to the victim again. Who was the victim? Floyd. And Floyd, they couldn't find him. Why? He has three outstanding warrants. So that's probably why. So he had his own warrants, and they couldn't get him. So that's the only reason why they wouldn't have convicted him on that, on the fast track robbery here. But under the totality of the circumstances, so you have to look at that. You can't get by that element. Rather, you can say that the officers, any of them intentionally, in a substantial showing. It's got to be a substantial showing according to the record here in this particular case. And, first of all, you can't say that they initiated, really initiated any prosecution, not in terms of Craighead, nor in front of Cross Nelson. Cross Nelson. Which of the defendants physically saw Mr. Meeks when he was picked up? The two people, they weren't the arresting officers. They sent two other officers. That's the other peculiarity of the case, and I'm glad you asked the question, because that's the mystery. When they went to actually arrest him, it was not Crosshead with him. They gave the information. Someone had been just looking around the area, and once they got the information that the two victims had ID'd them, they sent two other police officers to go arrest him. They did not go and see. So Cross Nelson was not a part. And Cross Nelson tells you, I didn't do any more investigation after I did the photo rate. Cross Nelson said, I wasn't there when they arrested them. So I know it – I'm trying to understand your answer to Judge Spancher's question. Did any of these four defendants see Meeks? According to the record, no. The opposing counsel says that he should have known as soon as they saw him that the photo array was not him because he had dreads or braids all around his face. Well, the record said they asked him on the record clearly, and they asked Cross Nelson. And they asked – and I can't – I wrote down ABC, but I forgot to write the R to tell you where it was. Cross Nelson said, when did you – they asked him, when did you realize that this was a mistake? He said, the day we went to court on the preliminary examination. That's when Cross Nelson – So you're saying Russell and Schmelzer and Craighead, none of them saw him after arrest. Right. And that's not in the record anywhere. They said – so it was always clear. And that seemed that it was on the day of the preliminary examination. And that's important. And even if they saw him, it's not clear that they saw the photo array because what had they done? They gave the – well, they did see the photo because they had to show – they had to – no, it was Cross Nelson who was there that they had to show the victims it was Meeks Little. And so the – so when they saw it, they reasonably believed that they had Meeks Little. This was in the case where they found out the answer. No, they didn't find out the answer. And you can say, oh, that's really poor work on their half. But they didn't find out the answer that this was Meeks – that Meeks Little and Meeks were two different persons to them. Meeks Little didn't even mean anything to him. And then you have two victims identifying him as this, so they felt that they got him. And so in our position here is that the officers are entitled to qualified immunity in this case. Even when I cited the case of Holter v. Seyer, Supreme Court in that particular case acknowledged where there was incarceration for 41 days. And in that particular case, the police officers actually had a picture, photo license and ID and so forth. But the victim picked the plaintiff out of the photo array. So based on the fact that he was pointed out by the victim of photo array, the court – they believed that they had the right person here. So that's what you have to look in the totality of the circumstances in this particular case. And just because, of course, which you well know, that he wasn't charged on the armed robbery and that he was later found quitted, that does not dismiss the existence of probable cause under the totality of the circumstances. But you can't say that they initiated and pressed. Cross Nelson said, no, I didn't follow up on the investigation. I didn't – I just turned in what I knew. You can't say – so on both of those elements, you can't find reckless disregard on Cross Nelson or that she – or that they – either of them initial pressed. They didn't go beyond the call of duty. They went on and did the basic thing. They took the next step. They took the next step. Maybe that's – or they didn't press or push, oh, we got to find him. They took the steps that they needed to take. And what – basically what Plaintiff is saying, they didn't do enough. They could have did more. It was poor work on their – that's really what the essence, however you want to say it, that they did sloppy work, they was poor judgment on their path. That is not a constitutional violation. And then you have to look at here. And without trying to snide, sound snide or any way in this particular case, he got a chance by the fact that they were calling themselves being reasonable until they talked to the victim again and not filing the charges that they very well could have and they can still do against him for that armed robbery. I don't think – he doesn't deserve a windfall under the facts of this case for when they made a reasonable mistake. And in their minds they had James Meeks in this case when you look at the totality of the circumstances. Do you have any more questions for me? Attorney Knight. Thank you, Ms. Fagan. Did any officers physically see him that are on the defendant list? Your Honor, the officers saw him, as I know, on the day of the preliminary exam. That was after he had been held. Held for 16 days. I'm asking you if anyone saw him before. To that, Your Honor, I have not seen that placed within the record for the transcripts and data that I have seen. Thank you. I would have to rely upon the other briefings and what's been posted, Your Honor. To the last point, and I'll try to be brief, counsel has stated that the windfall should not come to Mr. Meeks because he's a bad man, allegedly, because he had a carjacking prior that he confessed to, allegedly. The due process part of it. You're saying he confessed to the robbery, is what you're saying. The robbery, right. So he's in. You remember he gets put in custody. He denies, denies, denies. It had nothing to do with those two cases. Had nothing to do. You're a bad man if you don't do this, and you can see from the record about what that interrogation was like. He said, hey, listen, he confesses to the one, Your Honor, that was the start, the impetus. But that case can't go forward. There's no corpus delecti. You can't use in the state of Michigan, you can't use the confession to prove the body of the wrong. So here, you just label him a bad person, therefore he shouldn't come into a windfall, but we should award the police officers in a case where they just come off of a consent decree, where they're supposed to be trained. Here you have them multiple times. There was a judgment against the police officers to enforce them to do proper things. And no sooner than that dissipates, they go back, obviously, to their old ways. You're just making that up, Mr. Blood. There's nothing in the record that says this sort of problem was the basis of the consent decree, that there was a lack of training in this area that led to the consent decree, or that people reverted to their old ways. Hyperbole is nice, but where is that in the record? It was raised below in the oral argument by Ms. Carter in front of the district court judge, where she had mentioned that. Almost the entire argument in your law firm's brief is premised on what somebody said to the judge in an oral argument. Your brief is replete with that. I have to say I've never seen that before. That's not authority that somebody made an argument to a judge if there's no citation to the record in the argument or then in the brief that then relies upon it. Your Honor, I understand my time is up. You can certainly answer Judge McGeek's question if you have an answer. I think there's authority that's labeled out with Ms. Knapp's papers, our firm's papers, that show what we argue and the facts of the case because we cite two specific depositions facts within the Just go back and look at your brief again. You'll see that it cites to her argument as fact. I did see that, Your Honor. I appreciate that. I also saw the record made with regards to statements within the case. Thank you. Okay. Thank you, counsel. We certainly appreciate your arguments. The case will be submitted.